IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS M. BRADLEY, MICHELLE V. ARENA, MARIA SLATER, GARY FOLINO, ANTHONY FOLINO, FRANK FOLINO, RICHARD H. MCCULLOUGH AND HOLLY A. MCCULLOUGH, JOHN KEEFE, KILEY KEEFE, NANCI KEEFE, ROCK MANAGEMENT SERVICES, WILLIAM KEEFE AND MARTHA KEEFE, DANIEL MURRY, MASSARO CORPORATION, JOSEPH MASSARO II AND CAROLYN MASSARO, STEVEN MASSARO, AND JOSEPH A. MASSARO III, | **ELECTRONICALLY FILED** <br><br> Civil Action No. 17-407 <br><br> Judge Cathy Bissoon |
| Plaintiffs, | |
| v. | |
| ADVEST, INC., MERRILL LYNCH, PIERCE FENNER & SMITH INCORPORATED, BANK OF AMERICA, N.A. (as successor in interest to Merrill Lynch, Pierce, Fenner & Smith Incorporated and Advest Incorporated), ROBERT FELDMAN, | |
| Defendants. | |

## AMENDED COMPLAINT IN CIVIL ACTION

AND NOW, come the Plaintiffs, Richard and Holly McCullough, by and through their counsel, Patberg, Carmody & Ging and Rolf Louis Patberg, Esquire, and file the foregoing Amended Complaint in Civil Action and, in support thereof, aver as follows:

1. Plaintiffs Richard McCullough and Holly McCullough are adult individuals currently residing at 100 Camberly Drive, Monroeville, Allegheny County, Pennsylvania 15146.

2. Defendant Advest, Inc., is a Pennsylvania corporation, trading and doing business at One Oxford Centre, Pittsburgh, Allegheny County, PA 15219.

1

3. Defendant Bank of America (hereinafter "BOA") is a Pennsylvania corporation, trading and doing business at 301 Grant Street, Pittsburgh, Allegheny County, PA 15219,

4. Defendant Robert L. Feldman is an adult individual trading and doing business at 600 Grant Street, Pittsburgh, Allegheny County, PA 15219.

5. Defendant Merrill Lynch (hereinafter "ML") is a Pennsylvania corporation, trading and doing business at 1001 Liberty Avenue, 14th Floor, Pittsburgh, Allegheny County, PA 15222.

6. At all times relevant herein, Defendant Feldman acted within the scope and course of his employment with co-defendants. Defendant Feldman held himself out as being employed by ML; however, ML acquired Advest, Inc. and BOA acquired MO on dates uncertain.

7. During the course and scope of his employment with co-defendants, Feldman used the false representations and non-disclosures described in this Amended Complaint to acquire the investment business of the Plaintiffs or to interest them in doing business with him and, as a consequence of his false and deceptive practices, Plaintiff made investments in two penny stocks described herein through an account with Oppenheimer & Co.

8. Plaintiff Richard McCullough, before dealing with Defendant Feldman, primarily invested in products that were low risk.

9. Plaintiffs' goals were capital preservation and liquidity.

10. Defendant Feldman, while employed by co-defendant, engaged in numerous telephone discussions with Plaintiff about the securities which are the subject matter of this case.

11. These discussions primarily involved two penny stocks, Telkonet, Inc. ("TKOI") and Geo Global Resources, Inc. ("GGR").

12. TKOI is a small start-up company with little capital or business which is involved in the development of products designed to monitor or enhance energy efficiency.

13.     GGR is a small start-up company with little capital or business, which, by self-description, is involved in the exploration for oil and gas.

14.     To induce Plaintiffs to buy shares of stock in TKOI and GGR, Feldman made the below knowing and deliberate material misrepresentations of fact and of opinion.

15.     On or about March 17, 2005 and each succeeding date that Plaintiff purchased TKOI stock as set forth on Plaintiff's Exhibit 1, Feldman represented that TKOI would go to $14, then $40, then $70 and then $100 per share, depending on the need to induce a purchase or to allay fear and prevent liquidation of the position. Feldman's representations were not true as TKOI stock continued to fall in value after Plaintiff's initial purchase of the stock on March 17, 2005 at $4.31 per share.

16.     On or about April 22, 2005 and each succeeding date that Plaintiff purchased TKOI stock as set forth on Plaintiff's Exhibit 1, Feldman represented that he had a business relationship with TKOI's CEO or Board of Trustees and had frequent meetings and communications with inside sources, often in Baltimore, who told him TKOI obtained enormous government contracts which would be announced soon or that the contracts could not be announced. Such representations were not true, as the CEO of TKOI later advised Plaintiff during early 2010 that Feldman never had a business relationship with the CEO or the Board of Trustees, that there had been no meetings or communications between Feldman and the CEO or other inside sources and that TKOI had no government contracts. The CEO of TKOI advised that he did not know Defendant Feldman and that Feldman was never a consultant for TKOI, contrary to Feldman's representations.

17.     On or about August 11, 2005 and subsequent dates that Plaintiff purchased TKOI stock as set forth on Plaintiff's Exhibit 1, Feldman represented that TKOI entered into a contract

3

with GE to remotely monitor all GE sub power stations, which contract was going to be announced on a particular date, always delayed. Defendant Feldman's representation in this regard was false, as the CEO of TKOI later advised during early 2010 that TKOI had no contract with GE.

18.     On October 3, 2005 and subsequent dates that Plaintiff purchased TKOI stock, Feldman represented that the Department of Homeland Security was going to use TKOI technology at all major airports in the U.S. Defendant Feldman's representation was false as the CEO of TKOI later advised Plaintiff during early 2010 that TKOI did not have any government contract with the Department of Homeland Security to use TKOI technology at major airports.

19.     On or about June 7, 2006 Feldman represented that TKOI could not keep up with orders and had a huge backlog of work. Feldman's representation was false, as Plaintiff later learned during early 2010 that in speaking with TKOI's CEO's assistant that there was no backlog of orders and that TKOI needed money to produce its product and run the company.

20.     On or about May 18, 2007 Feldman represented that he owned a million shares of TKOI stock personally and that his family owned two million shares of stock when Plaintiff said he would sell. Feldman told him that to buy more TKOI shares because Feldman controlled the float, meaning that Feldman and his personal customers were the only individuals to own shares outside of the company. This representation was false, as Plaintiff was later told by Feldman that the shorts on the TKOI stock were "killing us" which meant Feldman did not control the float and that other people not under his control were selling shares whereas he previously stated to Plaintiff that he controlled all shares. Feldman also stated that he owned a million shares of the stock, and, if the Plaintiff threatened to sell, that Feldman would just purchase more, often for family and friends, and that he could use the money he had made on the tremendous rise in the value to help cure a disease which afflicted his sick son.

21. On or about July 31, 2007 Feldman represented that TKOI stock would become worth 60-80 Million, that Feldman and his clients "controlled the float" and that once the shorts were cleared out they would dramatically increase the value of the stock. This representation was false as Plaintiff was later told by Feldman that the shorts on the TKOI stock were "killing us" which meant Feldman did not control the float and that other people not under his control were selling shares whereas he previously stated to Plaintiff that he controlled all shares.

22. On or about January 9, 2006, January 11, 2006, and March 8, 2006, and on numerous dates thereafter, Feldman represented that he had a close friend in the GGR office of the CEO, Jon Paul, and that the company had the largest discovery of oil and natural gas ever in the Indian Ocean. This representation was false as Plaintiff later learned during early 2010 from management of GGR that GGR did not have large discoveries of gas and oil in the Indian Ocean.

23. On September 12, 2007, October 5, 2007, and November 27, 2007, and a number of times thereafter, Feldman represented that GGR Company had enormous contracts with the Indian Government that would be announced, sometimes on particular dates, or that must be kept confidential if the dates passed. Feldman represented that the contracts could not yet be announced by GGR because the Indian Government either would not allow it or kept delaying permission. These representations were false, as Plaintiff later learned from GGR management during early 2010 that it had no contracts with the Indian Government to drill for oil.

24. Defendant Feldman kept Plaintiffs in these stocks by persistently repeating the above false representations and expanding on them with additional false representations and opinions, and by failing to disclose the significant risks and adverse and deteriorating business situation of these companies, which were not covered by the research departments of Advest, ML or BOA, in which manner he was able to maintain a large book of business from investors in the

stocks, increasing his compensation when he sold his book of business or when ML acquired Advest and BOA acquired ML.

25. Feldman apparently made so many questionable trades for clients in stocks that Advest, ML and BOA did not cover with research that he was forbidden from engaging in penny stock sales by his employer. Before Feldman was forbidden by Advest, ML, and BOA to engage in penny stock stales, Feldman was selling penny stock that was not covered with research by Advest, ML, and BOA, whereas said companies should have monitored and supervised Defendant Feldman, discovered that he was engaging in said sales and prevented him from selling penny stock that they did not cover.

26. Feldman never disclosed the commissions paid to Advest, Merrill Lynch or BOA or himself for these transactions and used the investors' purchases of these stocks to dramatically increase the value of his book of business and, consequently, the bonus paid to him when Merrill Lynch acquired Advest.

27. Feldman's additional purpose in inducing Plaintiffs to purchase the stocks was to lure Plaintiffs to transfer their investment accounts to Defendant Feldman, therefore, further increasing the value of his book of business and bonuses paid to him.

28. Feldman further had the purpose in inducing Plaintiffs to purchase the stocks was to increase his personal stock value in that Feldman represented that he owned a million shares of the companies' stocks and that his family owned two million shares of the stocks. Feldman induced Plaintiff's to purchase the stocks in the companies in an attempt to increase the value of his own personal stocks by providing false information and making the above representations with regard to the financial stability of each company and promises of enormous growth of the value of the companies' stocks. Feldman acted as a market maker, stating that he solely controlled the float

of the stocks of the two companies and deceptively and falsely advised Plaintiffs and other investors that it was therefore impossible for the stock to drop in value.

29. Plaintiffs justifiably relied upon Feldman's deceptive, fraudulent, and false representations as Feldman held himself out as an expert in investments, whereas Plaintiffs typically invested in low risk securities with the purpose of preserving capital.

30. In reliance upon the material representations regarding TKOI and GGR stock, Plaintiff purchased shares of TKOI and GGR on the purchase dates set forth on Exhibit 1.

31. In reliance on Feldman's previously described false representations, the Plaintiffs and multiple other investors purchased shares of TKOI and GGR and suffered losses on these purchases as indicated on Exhibit 1, which is attached hereto and incorporated herein by reference.

32. Feldman communicated with Plaintiffs only to falsely market certain speculative stocks.

33. Feldman falsely represented that the stocks purchased would be secure investments.

34. Feldman knew or should have known that the TKOI and GGR were a high risk investment and not appropriate for the Plaintiffs.

35. Feldman received significant financial advantage in the form of commissions and increased book value for encouraging investors to buy these securities; undoubtedly, many other investors were induced to purchase these risky investments under the same or similar circumstances.

36. As a result of Feldman's knowingly false representations and deceptive conduct, Plaintiffs suffered tremendous financial losses in their investments in TKOI and GGR as more fully set forth in Exhibit 1.

## COUNT I

### Violation of Securities and Exchange Act of 1934 - §10(b)

### Plaintiffs v. All Defendants

37. Plaintiffs incorporate paragraphs 1 through 36 of the within Amended Complaint as though set forth at length.

38. At all times relevant, Defendant Feldman acted during the course and scope of his employment with each of the co-Defendants.

39. Defendant Feldman engaged in material misrepresentations and omissions of information regarding aforementioned investments in TKOI and GGR and the financial stability of each company and misrepresentations of expected growth as more fully set forth herein at paragraphs 15 through 26 of the within Amended Complaint which are incorporated by reference. Defendant Feldman further never disclosed that he was forbidden by his employers from engaging in any penny stock sales.

40. Defendant Feldman's aforementioned misrepresentations, as enumerated at paragraphs 15 through 26 of the within Amended Complaint were made and motivated by Defendant Feldman's wrongful and conscious misbehavior and intent to deceive and commit fraud for the purpose of inducing Plaintiffs to purchase shares of TKOI and GGR so as to maintain and increase the value of the stock for his own benefit and for the purpose of gaining Plaintiffs' business and inducing Plaintiff to transfer his brokerage account to Defendant, consequently increasing his book of business and compensation.

41. Defendants' aforementioned material misrepresentations and omissions were justifiably relied upon by Plaintiffs in connection with the Plaintiffs' purchase of the shares of TKOI and GGR stocks to Plaintiffs' detriment.

42. Plaintiffs' financial losses as a direct and proximate result of Defendants' material misrepresentations and falsehoods, Plaintiffs are in excess of $855,000.00, as more fully set forth at Exhibit 1, attached hereto, plus the lost increase in value of the initial investment had it remained in Plaintiffs' mutual funds which Plaintiffs margined in order to fund the subject penny stock investments.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants for compensatory and punitive damages, with costs and attorneys' fees assessed, and all other permitted relief.

## COUNT II

### Violation of the Pennsylvania Securities Act, 70 Pa. C.A. §§1-401, 1-403, 501(a)(ii)

### Plaintiffs v. All Defendants

43. Plaintiffs incorporate paragraphs 1 through 42 of the within Amended Complaint as though set forth at length.

44. At all times relevant, Defendant Feldman acted during the course and scope of his employment with each of the co-Defendants.

45. Defendant Feldman engaged in material misrepresentations and omissions of information regarding aforementioned investments in TKOI and GGR and the financial stability of each company and misrepresentations of expected growth as more fully set forth herein at paragraphs 15 through 26 of the within Amended Complaint which are incorporated by reference. Defendant Feldman further never disclosed that he was forbidden by his employers from engaging in any penny stock sales.

46. The misinformation and misrepresentations were material, as there was a substantial likelihood that the disclosure of omitted facts would have been viewed by the

reasonable investor as having significantly altered the total mix of information made available. Defendant Feldman, with intent to deceit and defraud Plaintiffs, knowingly made the misrepresentations regarding TKOI and GGR as set forth above, for the purpose of his own financial benefit in that he attempted to increase the value of the stock by making misrepresentations to investors regarding the financial stabilities of the companies.

47. Defendant Feldman's aforementioned misrepresentations, as enumerated at paragraphs 15 through 26 of the within Amended Complaint were made and motivated by Defendant Feldman's wrongful and conscious misbehavior and intent to commit fraud for the purpose of inducing Plaintiffs to purchase shares of TKOI and GGR so as to maintain and increase the value of the stock for his own benefit and for the purpose of gaining Plaintiffs' business and inducing Plaintiff to transfer his brokerage account to Defendant, consequently increasing his book of business and compensation. Defendant Feldman, with intent to deceit and defraud Plaintiffs, knowingly made the misrepresentations regarding TKOI and GGR as set forth above, for the purpose of his own financial benefit in that he attempted to increase the value of the stock by making misrepresentations to investors regarding the financial stabilities of the companies.

48. Defendants' aforementioned material misrepresentations and omissions were justifiably relied upon by Plaintiffs in connection with the Plaintiffs' purchase of the shares of TKOI and GGR stocks to Plaintiffs' detriment.

49. Defendant Feldman was substantially involved in the sale of the TKOI and GGR stocks to Plaintiffs and thus was a seller.

50. A relationship of trust, confidence and dependence existed between Plaintiffs and Defendant Feldman.

51. Defendant Feldman induced Plaintiffs to purchase the subject stock by means of manipulating, deceiving, defrauding, contriving and representing fictitious valuation of the TKOI and GGR stocks as set forth at paragraphs 15 through 26 of the within Amended Complaint.

52. Plaintiffs' financial losses as a direct and proximate result of Defendants' material misrepresentations and falsehoods to Plaintiffs are in excess of $855,000.00, as more fully set forth at Exhibit 1, attached hereto, plus the lost increase in value of the initial investment had it remained in Plaintiffs' mutual funds which Plaintiffs margined in order to fund the subject penny stock investments.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants for compensatory and punitive damages, with costs and attorneys' fees assessed, and all other permitted relief.

## COUNT III

### Negligent Misrepresentation

**Plaintiffs v. All Defendants**

53. Plaintiffs incorporate by reference paragraphs 1 through 52 as though the same were set forth at length.

54. At all times relevant, Defendant Feldman acted during the course and scope of his employment with each of the co-Defendants.

55. At all times relevant, Defendant Feldman owed Plaintiffs a duty of reasonable care and competence in providing information regarding the financial stability and expected growth of TKOI and GGR, including accurate information regarding the investment risk and suitability of the investment in the two companies.

56. Defendant Feldman supplied false information and misstatements as described at paragraphs 15 through 26 of the within Amended Complaint to Plaintiffs and others regarding TKOI and GGR for the purpose of inducing Plaintiffs and others to purchase the stock of these companies.

57. Defendant Feldman had a pecuniary interest in Plaintiffs' stock purchase, as he stood to benefit from the increase in stock value, commissions and increased book value in inducing investors including Plaintiffs to purchase the stock and transfer their brokerage account to Defendant Feldman.

58. Plaintiffs justifiably relied upon the false information provided by Defendant Feldman in purchasing the stock, as Defendant Feldman had specialized knowledge in investments and Plaintiffs, as unsophisticated investors, did not, typically investing in low risk stocks.

59. Defendant Feldman intended that the information he supplied regarding TKOI and GGR would influence the Plaintiffs' decision to purchase the investments.

60. Defendant Feldman provided the false information for the benefit and guidance of Plaintiffs, who were part of a limited group of investors.

61. Plaintiffs' financial losses as a direct and proximate result of Defendants' breach of fiduciary duty to Plaintiffs are in excess of $855,000.00, as more fully set forth at <u>Exhibit 1</u>, attached hereto, plus the lost increase in value of the initial investment had it remained in Plaintiffs' mutual funds which Plaintiffs margined in order to fund the subject penny stock investments.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants for compensatory and punitive damages, with costs and attorneys' fees assessed, and all other permitted relief.

## COUNT IV

### Fraudulent Misrepresentation

### Plaintiffs v. All Defendants

62.  Plaintiffs incorporate by reference paragraphs 1 through 61 of the within Complaint as though set forth at length.

63.  At all times relevant, Defendant Feldman acted during the course and scope of his employment with each of the co-Defendants.

64.  Defendant Feldman engaged in material misrepresentations and omissions of information regarding aforementioned investments in TKOI and GGR and the financial stability of each company and misrepresentations of expected growth as more fully set forth herein at paragraphs 15 through 26 of the within Amended Complaint, which are incorporated by reference. Defendant Feldman further never disclosed that he was forbidden by his employers from engaging in any penny stock sales.

65.  Defendant Feldman's aforementioned misrepresentations, as enumerated at paragraphs 15 through 26 of the within Amended Complaint were made and motivated by Defendant Feldman's wrongful and conscious misbehavior and intent to commit fraud for the purpose of inducing Plaintiffs to purchase shares of TKOI and GGR so as to maintain and increase the value of the stock for his own benefit and for the purpose of gaining Plaintiffs' business and inducing Plaintiff to transfer his brokerage account to Defendant, consequently increasing his book of business and compensation. Defendant Feldman, with intent to deceit and defraud Plaintiffs, knowingly made the misrepresentations regarding TKOI and GGR as set forth above, for the purpose of his own financial benefit in that he attempted to increase the value of the stock by making misrepresentations to investors regarding the financial stabilities of the companies.

66. Defendants' aforementioned material misrepresentations and omissions were justifiably relied upon by Plaintiffs in connection with the Plaintiffs' purchase of the shares of TKOI and GGR stocks to Plaintiffs' detriment.

67. Plaintiffs' financial losses as a direct and proximate result of Defendants' fraudulent misrepresentations to Plaintiffs are in excess of $855,000.00, as more fully set forth at Exhibit 1, attached hereto, plus the lost increase in value of the initial investment had it remained in Plaintiffs' mutual funds which Plaintiffs margined in order to fund the subject penny stock investments.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants for compensatory and punitive damages, with costs and attorneys' fees assessed, and all other permitted relief.

## COUNT V

### Breach of Fiduciary Duty

**Plaintiffs v. All Defendants**

68. Plaintiffs incorporate by reference paragraphs 1 through 67 of the within Amended Complaint as though fully set forth at length.

69. Plaintiffs and Defendant Feldman entered into a fiduciary relationship involving trust and confidence.

70. Defendant Feldman held himself out to be knowledgeable and have an expertise in investments and securities, knowing that Plaintiffs were unsophisticated and inexperienced investors who typically invested in investments with low risk.

71. Plaintiffs were in a position of weakness, dependence and trust, justifiably reposed whereas Defendant Feldman exercised an overmastering influence over Plaintiffs in inducing them to purchase shares of stock of TKOI and GGR.

72. Defendant Feldman, at all times relevant, was acting during the course and scope of his employment with each of the co-Defendants.

73. Defendant Feldman owed Plaintiffs a fiduciary duty to act with scrupulous fairness and good faith in his dealings with Plaintiffs and to refrain from using his superior position to Plaintiffs' detriment and his own advantage and to act in Plaintiffs' best interest.

74. Defendant Feldman breached his fiduciary duty owed to Plaintiffs by making false representations regarding the financial status, stability and outlook of TKOI and GGR so as to induce Plaintiffs to purchase stock in the companies and to not sell the stock once purchased, for Defendant Feldman's own financial gain, as more fully set forth at paragraphs 15 through 26 of the within Amended Complaint, which are incorporated herein.

75. As the direct and proximate result of Defendant Feldman's breach of his fiduciary duty to Plaintiffs, Plaintiffs sustained financially losses of investment loss related to the shares of GGR and TKOI becoming practically worthless, contrary to the representations made by Defendant Feldman.

76. Plaintiffs' financial losses as a direct and proximate result of Defendants' breach of fiduciary duty to Plaintiffs are in excess of $855,000.00, as more fully set forth at Exhibit 1, attached hereto, plus the lost increase in value of the initial investment had it remained in Plaintiffs' mutual funds which Plaintiffs margined in order to fund the subject penny stock investments.

WHEREFORE, Plaintiffs respectfully request judgment in their favor for compensatory and punitive damages, with costs and attorneys' fees assessed, and all other permitted relief.

RESPECTFULLY SUBMITTED:

PATBERG, CARMODY & GING

DATE: May 1, 2017          By:   *s/ Rolf Louis Patberg, Esquire*
                                 Rolf Louis Patberg, Esquire
                                 PA I.D. No.: 65185

                                 Patberg, Carmody & Ging
                                 Deutschtown Center
                                 801 Vinial Street - Third Floor
                                 Pittsburgh, PA  15212
                                 (412) 232-3500

                                 Attorney for Plaintiffs Richard H.
                                 McCullough and Holly A. McCullough.

## CERTIFICATE OF SERVICE

I, Rolf Louis Patberg, Esquire, hereby certify that on May 1, 2017, a true and correct copy of the foregoing Amended Complaint in Civil Action was filed with the Clerk of Court using the CM/ECF system upon the following:

>John K. Gisleson, Esquire
>Daniel Carmeli, Esquire
>Morgan Lewis
>One Oxford Center
>Thirty-Second Floor
>Pittsburgh, PA  15219
>John.gisleson@morganlewis.com
>Daniel.carmeli@morganlewis.com

>*s/ Rolf Louis Patberg, Esquire*
>Rolf Louis Patberg, Esquire